Eugene R. Canudo, J.
The issue here is whether a corporation and its president-manager, finding themselves suddenly without funds and out of business, are to be held criminally responsible under the Labor Law for failure to pay wages and vacation benefits to their employees.
There is no disagreement as to the basic facts, which are as follows:
1. The Milton 0. Johnson Company, a corporation, was in the business of printing and supplying stationery to banks for a period of more than 90 years up to October 14,1970.
2. The defendant Walter Gemmill, one of seven shareholders, started with the company as an office boy 52 years ago and in 40 years worked his way up to the presidency. For the 10 years or so immediately preceding the corporation’s debacle he had a complete free hand, as president, in running its affairs.
3. For about 10 years before its collapse the corporation had. been factoring its accounts. This began with the investment of some three or four million dollars in new equipment. The current factors (the Armstrong Company) had taken over from other factors about a year and a half before October 14, 1970. When the corporation billed its customers, it would submit invoices to Armstrong, who would advance 85% of the amounts due. Then, when payments came through about 60 to 90 days later, they would be turned over, in full, to Armstrong. Payrolls were met, in the regular course of the corporation’s operations, by funds supplied by Armstrong. On October 14,1970, the corporation’s total indebtedness to Armstrong was around $700,000.
4. On the afternoon of October 14, 1970 Armstrong informed Mr. G-emmill that they would not meet that day’s payroll and would supply no more funds, ever, to the defendant corporation. *872 Lacking any contractual guarantee, Mr. Gemmill, who had himself drawn no salary for over a month and who in addition was owed several thousand dollars in unpaid salary, did the only thing he could do. He called in his employees — classified as manual workers under the law — and explained to them that the company was out of business and regretfully, there was no money to pay wages and vacation benefits then due.
5. Notwithstanding formal demands made through proper channels, none of these employees have received any of these wages or other benefits.
The corporation and its president are now each charged with violating sections 191 (subd. 1, par. a) and 198-c of the Labor Law. Section 191 (subd. 1, par. a) says that manual workers must be paid weekly and not later than seven calendar days after the end of the week in which their wages are earned. Section 198-a says, in part: ‘ ‘ Every employer who does not pay the wages of all of his employees in- accordance with the provisions of this chapter [the Labor Law] is, and the officers and agents of any corporation who knowingly permit the corporation to violate this chapter by failing to pay the wages of any of its employees in accordance with the provisions thereof, are guilty of a misdemeanor. ”
Section 198-c, which includes vacations, among other items, as “ benefits or wage supplements,” says that in addition to any other penalty or punishment otherwise prescribed by law, any employer who is a party to an agreement to pay or provide benefits or wage supplements to an employee and who fails to do so within 30 days after they are due commits a misdemeanor. “Where such employer is a corporation,” says subdivision 1, ‘ the president, secretary, treasurer or officers exercising corresponding functions .shall each be guilty of a misdemeanor. ”
As far as the corporation is concerned, I find that, even assuming no evil intent, it has indulged in conduct clearly prohibited by the Labor Law. The violations in question represent malum prohibitum which the Legislature had every right to proscribe.
The defendant Walter Gemmill, in his defense, contends that the requirement of section 198-a, that to be liable he must have knowingly permitted the corporation to violate the Labor Law, applies equally to any violation under section 198-c. With this I agree. He states further that although he was in full charge of the corporation’s business he did not knowingly permit the corporation to violate the. Labor Law, • since he had rio way of knowing or anticipating Armstrong’s drastic action of October *873 14, 1970, and could have had not the slightest inkling that there was going to be a failure to meet the payroll. Therefore, he states, he cannot be held to have violated the Labor Law. With this I must disagree.
In defining the term “ knowingly permit ” the Court of Appeals, in People v. Trapp (20 N Y 2d 613) drew upon its own decision in People v. Ahrend Co. (308 N. Y. 112, 114) which stated: ‘ ‘ the corporation itself is, ipso facto, criminally liable for failure to pay, but of its officers those only are punishable who stand in such a relation to the corporation’s affairs that they actually know of the nonpayment. ’ ’ The purpose of this statutory language, according to the Ahrend case {supra) was ‘ ‘ to exculpate nominal officers or any others who are not actually in touch with the corporate financial affairs.” Gemmill can hardly be said to fall within that category. The word ‘ ‘ knowingly ” was defined {supra, p.113) as “merely a knowledge of the existence of the - facts constituting the ferime. ” The word “ permit ” was defined in Ahrend as allowing to happen, failing to prevent.
In People v. Trapp (20 N Y 2d 613, supra) the court discussed the Legislature’s intent in adopting the Lábor Law’s prohibitions. It said {supra, p. 618) that “ an officer may not be convicted of violating the statute unless he stood in such relation to the corporate affairs that it may be presumed that he knew or should have known of and taken some steps to prevent the nonpayment. The court refused to reverse the conviction of Trapp who, like Gemmill, ‘1 was intimately involved in the affairs of the corporation and * * * knew or should have known of tjie nonpayment. ”
Mr. Gemmill knew the corporation’s shaky position. He lived with it, day in and day out. He was all too well aware of the financial -stranglehold that Armstrong held over its very exists ence. His failure to draw his own pay was his own affair, but however well-intentioned he may have been, he was gambling at the expense of the corporation’s employees, knowing that disaster could strike at any moment. When the Legislature wrote into the Labor Law the language quoted earlier in this opinion, it intended that this type of risk be placed upon the employer and its managers rather than upon workers who would have no recourse against professional moneylenders or others operating outside of the corporate structure and hence insulated from civil or criminal responsibility.
“ Doubtless,” said the court in the'Trapp case (supra, p. 167), “ at times compliance with the law results in personal inconven *874 ience and hardship; yet, whatever bearing this may have on the nature of the punishment, it can have no bearing on the power of the Legislature to define criminal responsibility. ”
I find no legal ground to distinguish the,liability of the corporation from that of its president. The People have proved the guilt of the corppration and of the defendant Walter Gemmill beyond a reasonable doubt, and I find each of them guilty of violating 'Sections 191 (subd. 1, par. a) and 198-c of the Labor Law.