OPINION OF THE COURT
Anita Florio, J.
The information against the defendant, Harry Lustig, charges that he violated section 191 (subd 1, par d) of the Labor Law, as implemented by section 198-a thereof (an unclassified misdemeanor), in that he was an officer of a corporation who knowingly permitted the corporation to violate the Labor Law by failing to pay wages to two of its employees.
The following constitutes the findings of fact, conclusions of law and decision of the court.
The findings of fact are as follows:
Circulation Associates, Inc., was organized as a New York corporation in 1954 to conduct, a circulation mail order and printing business. It had approximately 11 departments and 200 employees.
From the inception of the corporation, Edward Lustig, the brother of the defendant, was its president, chief executive, and administrative officer, owned almost all (85% or more) of its stock, and exercised most of the corporate responsibilities solely and exclusively. He had the active managerial power.
On October 14, 1960 a corporate resolution was filed' by Circulation Associates, Inc., with the Chase Manhattan Bank in which Edward Lustig, the president, and Leonard Eichenholtz, the treasurer, were designated as the only two signatories on withdrawals, singly, and only Edward Lustig was authorized to effect transactions regarding loans, credit and security. Said resolution listed the defendant as an executive vice-president, and Albert Lustig, another brother, and others as vice-presidents, and Mildred Lustig as vice-president-secretary.
Defendant knew of such designation and, in fact, held himself out by such title in his sales activities.
Leonard Eichenholtz was the controller and treasurer of the company from 1952 to June, 1972, when he resigned. During this period he and Edward Lustig were the only authorized signatories on corporate checks, but Eichenholtz signed all *671 checks. After Eichenholtz’ resignation defendant became an authorized signatory.
In effect, they were all dummy corporate officers and never had or performed any of the usual, customary or ordinary responsibilities that those titles indicate nor did they have any corporate financial or administrative responsibilities. Directors and stockholders meetings were never held.
A subsequent banking resolution was filed with the Chase Manhattan Bank on June 6, 1972, in which Edward Lustig, as president, and the defendant, as executive vice-president, and the facsimile signature of Edward Lustig, on file, were designated as those authorized to make withdrawals, singly, and only Edward Lustig was authorized to effect loans, credits or security. On that resolution, Mildred Lustig, as corporate secretary, certified that the present officers of the corporation were Edward Lustig, president, and Harry Lustig, executive vice-president.
Payroll checks were signed with the facsimile signature of Edward Lustig.
Defendant occasionally signed checks for postage. However, he was primarily concerned with sales, and his main contacts were with the printing and bindery departments which processed the materials he had sold to his accounts. He supervised the work of these departments as to the giving of general worksheet instructions on his orders. He owned only a small amount of stock, if any, in the corporation, and his payroll card was filed under "Salesman” classification. He nominally took over the printing department when a Mr. Goldberg left in November, 1974.
Circulation Associates, Inc., filed a petition in bankruptcy for reorganization under chapter 10 of the Bankruptcy Law (US Code, tit 11, §§ 501-676) in the Southern District of New York on July 1, 1974, and thereafter continued until November 24, 1975 to operate as Circulation Associates, Inc., debtor-in-possession, by order of the Bankruptcy Court of July 2, 1974. On July 5, 1974, a final resolution was filed by the debtor-in-possession corporation with the Chemical Bank in which defendant was again listed as an executive vice-president, and he and Edward Lustig and Edward’s facsimile signature were designated as the authorized signatories for withdrawals, singly. Such authority existed as to both, singly also, with respect to loans, credits and security transactions. The defendant signed bank signature cards under said title.
*672 The defendant was not responsible for the hiring, supervising, firing or the payment of wages of the employees. He rarely signed checks, and then only those for postage, and never negotiated with lending institutions. He was never involved with the finances or financial administration or management of the company. He never signed contracts.
Edward Lustig had the last word as to hiring and had the sole authority to approve wage increases. However, defendant, as head of a department, may have done intermediary interviewing of applicants for positions in that department with Edward Lustig making the final decision thereto.
In the spring of 1975, the company developed a cash-flow problem and wage payments began to lag.
Edward Lustig, the president, consequently held several meetings of the employees, during which he informed them of the company’s financial difficulties and problems and told them they would be paid as cash was received. Those who did not wish to accept such a deferred payment arrangement were given the option of terminating their employment and receiving payment in full.
Defendant was present at some of these meetings at which Edward told employees not to worry, as they would be paid, and defendant said nothing to repudiate these statements.
Many employees like Hertha Reiser and Anna Boudreau, the complaining witnesses herein, who had worked for the company between 14 to 25 years and felt a certain loyalty toward it, remained, thinking the company would resolve its difficulties and extricate itself from its cash-flow problems.
The bookkeeping department decided who needed to be paid immediately, and those employees most in need were paid first when cash became available.
Consequently, complaining witnesses Reiser and Boudreau, clerical workers, were never paid their wages for the seven-week period covering September 5, 1975, through October 17, 1975, amounting to the sum of $1,225 (at $175 per week) in the case of Reiser and $805 (at $115 per week) in the case of Boudreau, in the total amount of $2,030. Also, some 30 to 40 other employees never received their wages for this period.
Defendant also allowed his wage payments to lag during this period and was owed around 16 weeks’ salary by October 17, 1975.
The company was adjudicated a bankrupt on November 24, *673 1975, and Robert Rubinger was appointed the trustee in bankruptcy.
Edward Lustig died in April, 1977.
In early 1977 an Internal Revenue Service officer made a responsible officer penalty assessment against the defendant under the provisions of section 6672 of the Internal Revenue Code (US Code, tit 26, § 6672) with respect to unpaid withholding taxes due from Circulation Associates, Inc., for periods covering September, 1972 to June, 1974.
After a protest of said findings and an appeal by IRS, defendant was notified on August 24, 1977 by the IRS that no deficiency or overassessment existed and that he was not a responsible officer.
The issues herein are: (1) Whether Circulation Associates, Inc., debtor-in-possession, failed to pay two of its clerical employees their earned wages in accordance with the agreed terms of their employment; and (2) Whether the defendant, Harry Lustig, as a corporate officer, knowingly permitted this corporation to violate section 191 (subd 1, par d) of the Labor Law by failing to pay the wages of two of its employees in accordance with the provisions of section 198-a thereof.
The People have sustained their burden of proof as to the nonpayment by Circulation Associates, Inc., debtor-in-possession, of wages on a current basis to at least two employees, namely, Reiser and Boudreau, who are complainants in this action, resulting in wages due them in the amounts of $1,225 and $805, respectively, for the period September 1, 1975 through October 17, 1975.
The applicable statutes require for culpability that the corporate officer "knowingly permit” the corporation to fail to pay the wages of any of its employees in accordance with the provisions thereof (Labor Law, § 191, subd 1, par d; § 198-a). "Knowingly” merely requires a knowledge of the existence of the facts constituting the crime (People v Ahrend Co., 308 NY 112, 113). To violate the statute there is no necessity that defendant have knowledge of the unlawfulness of the act or omission (People v Ahrend Co., supra, p 115). In this instance defendant knew that these employees were not going to be paid regularly while they continued to work for the corporation.
The facts indicate that defendant was present at some meetings held by his brother Edward Lustig, one as early as *674 the spring of 1975, at which it was explained that there was a cash-flow problem and that employees who wished to stay with the corporation would be paid as money came in. Defendant knew that some 30 to 40 employees were not being paid regularly each week on Wednesday, and that there was a lag in wage payments. He was well aware of the financial difficulties the company had experienced in that it had been operating in the shaky position of debtor-in-possession status since the previous July. He was not receiving his own salary on a regular basis, a further indication of his knowledge regarding the financial plight of the corporation.
To "permit” is used herein in the sense that it means to allow to happen, or to fail to prevent (People v Ahrend Co., supra, p 113).
Under the applicable sections of the Labor Law, officers are only punishable who stand in such a relation to the corporation’s affairs that they actually know of the nonpayment. Therefore, "nominal” officers or anyone else who is not actually in touch with the financial affairs of the corporation are exculpated (see People v Johnson Co., 71 Misc 2d 870).
Now, the defendant maintains he was only a "nominal” or dummy corporate officer, having been given the title of executive vice-president for family convenience and without the necessary approval of a board of directors or stockholders’ resolution, since there were no meetings or minutes of same. However, even if his contention that he had nothing to do with corporate management and financial affairs is borne out by the evidence or lack of evidence, nevertheless he was aware of the fact that he had been designated executive vice-president and allowed himself to be held out as a corporate officer. Also, due to his job as a full-time salaried, corporate salesman he was regularly on the premises and intimately in touch with, and stood in such a relation to, the corporation’s daily affairs that he actually knew of the wage nonpayments from the moment they began.
And, conceding that his anomalous position rendered him powerless and without the requisite authority to effectuate corporate compliance with the statute, he nevertheless had two alternatives. He could acquiesce in the decisions or actions of corporate management and face the possibility of criminal prosecution, as defendant did here, or he could have disobeyed and perhaps sacrificed his position and quit, this choice undoubtedly being a most difficult one, resulting in *675 personal inconvenience and hardship and one which might be interpreted as an act of disloyalty (People v Trapp, 20 NY2d 613) or at the very least, defendant perhaps could have relieved himself of criminal responsibility had he resigned as executive vice-president and continued solely in a sales capacity with the company. Here, the defendant did not put himself out by taking even the slightest step to prevent the nonpayment, since we cannot consider his continued increased efforts to make sales in order to bring in additional moneys to ease up the cash flow as such. Rather, he chose to. be a passive bystander, trying to generate sales and collect thereon for the good of the company while retaining his officer’s title. He had a statutory duty which he did not fulfill.
Unfortunately, even though defendant was by all appearances never an officer "in fact,” he held himself out as an v executive vice-president and allowed himself the use of such title, and he therefore cannot now exculpate himself by claiming the privilege of hiding behind a "nominal” title defense (see People v Ahrend Co., 308 NY 112, supra; People v Trapp, supra). His true status may only have a bearing now as to the nature of the punishment to be imposed.
Although defendant urged that this court consider the fact that the IRS findings indicated that he was not a responsible officer, I find that determination to have no bearing on defendant’s liability hereunder in that under the Internal Revenue Code there is a different standard of a corporate officer’s liability than that applied under the Labor Law in that under the Internal Revenue Code willfulness is a necessary element, as the act involved must be voluntary, conscious and intentional.
The court, therefore, finds the defendant guilty of violating section 191 (subd 1, par d) of the Labor Law for having knowingly permitted Circulation Associates, Inc., debtor-inpossession, to violate the law by failing to pay its clerical employees, Hertha Reiser and Anna Boudreau, wages for the period from September 1, 1975 through October 17, 1975, in accordance with the agreed terms of employment.